**AFFIDAVIT**

3:18mj259 EMJ

Your affiant, Darren D. Maasin, being duly sworn, deposes and states as follows:

1. Your Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Tampa Field Division, Pensacola Field Office, and has been employed as such for approximately 17 years. Your affiant is a graduate of the Federal Law Enforcement Training Center (FLETC) and the ATF National Academy and has received training in the enforcement of violations of state and federal laws. Your affiant is charged with the investigation and enforcement of violations of federal criminal laws pertaining to firearms and controlled substances.

2. Your affiant has participated in investigations of individuals who have violated state and federal laws, particularly those laws found in Titles 18 and 21 of the United States Code. Further, your affiant has participated in the execution of search warrants wherein firearms, ammunition, large amounts of narcotics, currency, drug paraphernalia, and records of firearms and narcotics trafficking have been recovered. As a part of your affiant's duties, to include 7 years assigned to both a High Intensity Drug Trafficking Area (HIDTA) Task Force and Organized Crime Drug Enforcement Task Force (OCDETF) Strike Force, your affiant has conducted and participated in the arrest of firearms and narcotics law violators. In addition, your affiant has testified on several occasions in grand jury proceedings, where such testimony has contributed to the indictment of numerous individuals. Additionally, your affiant has had conversations with other experienced agents regarding firearms and narcotics trafficking activities and the many different enforcement methods used to combat firearms and narcotics trafficking.

3.      This affidavit is made in support of an application for a search warrant to search three devices, more specifically described as:

**Attachment A(1)** – Toshiba, 2TB External Hard Drive, PIN: HDTC820XK3C1, SN: 85SAT0P8TZ16;

**Attachment A(2)** – Samsung, Model SM-J327T1, IMEI: 355603-08-696780-1; and

**Attachment A(3)** – Black iPhone, Model A1723, IMEI: 356604089599483.

That is, this affidavit is made in support of authorization to search these cellular telephones and storage device for evidence of the following violations: possession of a firearm in furtherance of a drug trafficking violation, in violation of Title 18, United States Code, Section 924(c), and possession of a controlled substance with intent to distribute, in violation of Title 21, United States Code, Section 841, which evidence is more particularly described in Attachment B. The information contained in this affidavit was obtained during the course of your affiant's investigation of the conduct of Robert Earl BARGNARE, III, and others, and/or is based upon information provided to your affiant by other law enforcement officers. Since this affidavit is for the limited purpose of establishing probable cause, your affiant has not included every fact known about this investigation, but rather only those facts your affiant believes are necessary to establish probable cause for the requested search warrant.

## **PROBABLE CAUSE**

4.      On or about May 23, 2018, as part of an ongoing investigation, an ATF Undercover Agent ("UC") met with a conspirator of BARGNARE's for the purpose of purchasing methamphetamine. In the UC's presence, the conspirator telephonically arranged for a quantity of methamphetamine to be delivered to their location. A short time later, a young black male with facial hair, later identified as BARGNARE, arrived at the location. Still in the

2

UC's presence, the conspirator then paid BARGNARE with money provided to him by the UC for a quantity of methamphetamine. After the exchange, BARGNARE left the location in a Chevrolet Malibu bearing Florida license plate JMIY58. The conspirator then provided the methamphetamine purchased from BARGNARE to the UC. The methamphetamine was later field-tested, which confirmed the presence of methamphetamine. A total of $900.00 was spent for approximately two ounces of methamphetamine from BARGNARE.

5. On or about June 28, 2018, the UC again met with the conspirator to arrange a purchase of three ounces of methamphetamine. While discussing the particulars, the conspirator received a telephone call from an individual he identified as "Red." The UC heard the conspirator confirm with "Red" that he wanted "three." The UC then provided the conspirator with the funds to purchase the three ounces of methamphetamine from "Red."

6. A short time later, law enforcement surveillance teams observed BARGNARE, in the same Chevy Malibu from the previous illicit transaction, pull up to the location where the UC was with the conspirator. The UC provided the conspirator with the funds to purchase the methamphetamine. The conspirator then exited their location and entered BARGNARE's vehicle. Following the exchange between BARGNARE and the conspirator, surveillance teams observed the conspirator exit BARGNARE's vehicle and then he provided the UC with two clear plastic bags containing methamphetamine. The methamphetamine was later field-tested, which confirmed the presence of methamphetamine. A total of $1,275.00 was spent for approximately three ounces of methamphetamine from BARGNARE.

7. On or about August 31, 2018, your affiant received a federal Arrest Warrant for BARGNARE, charging him with conspiracy to distribute methamphetamine, in violation of Title

21, United States Code, Section 846. BARGNARE has since been indicted by a federal grand jury.

8. On or about September 8, 2018, the Pensacola Police Department ("PPD") responded to 1390 Langley Avenue, Pensacola, Florida, which is the residence of BARGNARE's girlfriend, Teria Nicole Moore.[1] BARGNARE was located at this address and placed in custody. While taking BARGNARE into custody, officers observed (in plain view) a plastic bag containing a "white chunky substance" on the table next to where BARGNARE was sitting. After waiving his *Miranda* rights, BARGNARE stated the "white chunky substance" was Xanax and he did not have prescription for it.

9. Prior to being transported to the Escambia County Jail, BARGNARE requested his cellular telephone. BARGNARE was provided with a black iPhone, more fully described in Attachment A(3), which was located on the table near where BARGNARE was sitting. While BARGNARE was being transported to the Escambia County Jail, he was constantly asking the officer to charge the cellular telephone. When BARGNARE was being processed at the Escambia County Jail, the black iPhone was turned over to the jail with BARGNARE's other personal belongings. While BARGNARE was being removed from the residence and then transported to the jail, officers obtained a search warrant for 1390 Langley Avenue.

10. During the execution of the residential search warrant, PPD officers located a camouflage backpack leaning against the couch where BARGNARE was observed laying prior to his arrest. Inside the backpack, officers located the following items: a loaded Smith & Wesson 9mm pistol; a digital scale; plastic bags; approximately 29 grams of methamphetamine,

---

[1] BARGNARE, at that point, had both federal and state warrants for his arrest.

4

individually packaged; approximately 11 grams of an unknown brown/grey substance; approximately 5 grams of cocaine base; one bottle of Promethazine Syrup; a cellular telephone, more fully described in Attachment A(2); and, an external hard drive, more fully described in Attachment A(1).

11. On the same day, your affiant interviewed BARGNARE at the Escambia County Jail. After waiving his *Miranda* rights, BARGNARE admitted to the possessing the firearm located in the camouflage backpack, selling narcotics and having the firearm for "protection." All of the electronic devices are currently being held at the ATF Pensacola Office.

12. During the course of your affiant's training and experience, and through conversations with other more experienced law enforcement officers, your affiant has learned of various methods used by narcotics traffickers to conceal their assets, income, and activities from the government and other third parties. Based on your affiant's training and experience, and through conversations with other officers and agents, your affiant knows the following:

(a) Narcotics traffickers often utilize cellular telephones to facilitate communication with co-conspirators and/or store telephone numbers/addresses of associates;

(b) Narcotics traffickers often utilize multiple cellular telephones in an effort to compartmentalize their narcotics trafficking business. Multiple cellular telephones are often utilized in an effort to maintain anonymity and independent contact between sources of supply and a range of customers;

(c) Narcotics traffickers maintain records, receipts, notes, ledgers, and other items relating to the transportation, ordering, sale and distribution of controlled

substances, which are usually maintained where the traffickers have ready access to them and which are often stored on digital media;

      (d)    Narcotics traffickers commonly maintain addresses or telephone numbers in devices which list names, addresses and/or telephone numbers of their associates in the trafficking organization; such records are normally maintained within places/things under their control;

      (e)    Narcotics traffickers take or cause to be taken photographs of themselves, their associates, their property, and the illegal narcotics they distribute, and often maintain these photographs within places/things under their control, including on cellular devices and other electronic storage devices;

      (f)    Narcotics traffickers commonly use cellular telephones in order to communicate with their criminal associates and those telephones are commonly carried with them or kept at locations under their custody and control, such as their residences and vehicles, and contain names, numbers and other information stored in the phones; and

      (g)    Narcotics traffickers commonly are involved in money laundering and retain records of their transactions within places/things under their control. Records of this kind are also often stored on digital media.

Further, your affiant has been involved in investigations, and been made aware of investigations, in which individuals who possessed firearms took photographs of themselves with the firearms and said photographs were recovered from cellular devices and other storage devices. Your affiant knows from this investigation that BARGNARE was in contact with his conspirator over the telephone as discussed above.

13. Based upon the information above, your affiant respectfully submits and believes there is probable cause to believe that violations of Title 18, United States Code, Section 924(c)(1) and Title 21, United States Code, Section 846, and evidence of said offenses more specifically set forth in Attachment B, will be found on the devices described in Attachment A.

14. Your affiant declares under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
DARREN MAASIN,
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me this 24th day of September, 2018.

_____
Elizabeth M. Timothy
United States Magistrate Judge